IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| LARRY DOBSON, JR., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-18-3624 |
| HARNDEN GROUP LLC, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

*Pro se* plaintiff Larry Dobson, Jr. ("Plaintiff") sued his employer, Harnden Group LLC, and several of its employees for race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, *see* 42 U.S.C. §§ 2000e-2(a), 2000e-3(a). In his complaint, Plaintiff named Harnden Group, its owner Chuck Harnden, its co-owner Don McCoy, and two of its superintendents, Sonny Jayne and Bradley Miller ("Defendants"). Plaintiff initially filed suit in Anne Arundel County Circuit Court. Defendants removed the case to this Court and, then, moved to dismiss. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, Defendants' motion to dismiss will be granted in part and denied in part.

### I. *Factual and Procedural Background*

In summarizing the allegations of the complaint, the Court construes all facts in the light most favorable to the plaintiff, as is required on a motion to dismiss. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). Courts construe *pro se* complaints liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

1

Plaintiff has worked for Harnden Group since May 2015. (Compl. at 4, ECF No. 4-3.) In December 2017, Plaintiff became the target of his co-workers' jokes. On December 12, one co-worker asked Plaintiff if he wanted some "black donuts" and laughed. (*Id.* ¶ 1.) On December 13, other co-workers mentioned that Jayne had some "black donuts" for Plaintiff. (*Id.* ¶ 3.) One of the co-workers explained to Plaintiff that someone had left black and white donuts in the office and that Jayne had said, "[I] do[]n't eat black donuts only white donuts, give these black donuts to Larry Dobson." (Statement at 1, ECF No. 4-4.)[1] The co-worker continued that, if his name was Larry Dobson, the black donuts were a gift from Jayne, who "doesn't like anything black." (*Id.*)

The next day, Plaintiff asked Miller about filing a racial discrimination claim. (Compl. ¶ 4.) Miller told Plaintiff that "Jayne had other instances wherein racial slurs were used." (*Id.* ¶ 7.) Miller supported Plaintiff's decision to file a claim and offered to give Plaintiff the appropriate paperwork. (*Id.*) When Miller was unable to find the paperwork, he conducted a meeting with Plaintiff, Jayne, and McCoy. (*Id.* ¶ 5.) When Plaintiff insisted on filing a discrimination claim after the meeting, McCoy agreed to forward the claim to the human resources department. (*Id.*) Plaintiff sent McCoy his claim on December 18. (*Id.* ¶ 6.)

Between January 3 and February 22, 2018, Plaintiff was demoted from Operator to Laborer. (*Id.* ¶ 11.) In March, Plaintiff was assigned to work "in confined spaces without certification from the Army Corps of Engineers." (*Id.* ¶ 13.) On several occasions, Defendants did not inform Plaintiff of "rain days" even though "other employers were allowed to work on those days." (*Id.* ¶ 11, 14.) Also, during March, Defendants assigned other employees to operate equipment that Plaintiff used to operate. (*Id.* ¶ 15.)

---

[1] Plaintiff attached a statement to his complaint, which the Court considers in evaluating the sufficiency of the allegations. *See E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011) ("In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.").

On the same day that Plaintiff filed his internal discrimination claim, he filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (Pl. Opp. at 2, ECF No. 9.)[2] On May 31, 2018, the EEOC issued Plaintiff a letter informing him that he had ninety days to sue on the charge. (Not. of Right to Sue at 1, ECF No. 4-5.) The EEOC forwarded this right-to-sue letter to Harnden at Harnden Group. (*Id.*) On June 4, "McCoy insinuated and communicated biased remarks regarding the new cellphone policy directed towards Plaintiff." (Compl. ¶ 18.) Later in June, "Jayne negligently shortened Plaintiff's payroll hours." (*Id.* ¶ 19.)

In late August or early September, Plaintiff filed a *pro se* complaint, claiming that Defendants discriminated against him because of his race and retaliated against him for complaining of the allegedly discriminatory conduct at Harnden Group. Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. *Subject Matter Jurisdiction*

Before turning to Defendants' arguments for dismissal pursuant to Rule 12(b)(6), the Court addresses whether it has subject matter jurisdiction. In the Fourth Circuit, it is a jurisdictional matter whether an individual qualifies as an "employer" under Title VII and, thus, may be liable for Title VII violations. *See Woodard v. Va. Bd. of Bar Examiners*, 598 F.2d 1345, 1346 (4th Cir. 1979). "When a requirement goes to subject-matter jurisdiction, courts are obligated to consider *sua sponte* issues that the parties have disclaimed or have not presented." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012).

---

[2]      Ordinarily, a party cannot amend its pleading through its briefs. *See Saunders v. Keenan*, Civ. No. JKB-15-1265, 2015 WL 4622492, at *1 (D. Md. July 31, 2015). However, as part of the "duty to construe *pro se* pleadings liberally," courts may consider allegations in a response to a motion to dismiss, even if they were not included in the original complaint. *Higgs v. Airframe Modification Prof'l Mechs., Inc.*, Civ. No. JKB-10-2379, 2011 WL 1637637, at *2 (D. Md. Apr. 29, 2011); *Rush v. Am. Home Mortg., Inc.*, Civ. No. WMN-07-854, 2009 WL 4728971, at *3 (D. Md. Dec. 3, 2009) (considering new facts alleged in an opposition brief "to the extent that the additional facts support [a *pro se* plaintiff's] existing claims").

A plaintiff bears the burden of establishing a court's subject matter jurisdiction, *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982), meaning "whether the court has the competence or authority to hear the case," *Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005). A challenge to a court's subject matter jurisdiction may be either facial, i.e., complaint fails to allege facts upon which subject matter jurisdiction can be based, or factual, i.e., jurisdictional allegations of complaint are not true. *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Id.* at 192. Applying this standard, the Court considers whether Plaintiff has established its subject matter jurisdiction over each Defendant.

Under Title VII, "employer" "means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). Only "employers" are liable for Title VII violations. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999) ("Title VII does not provide a remedy against individual defendants who do not qualify as 'employers.'"). Plaintiff does not allege that the individual defendants—Harnden, McCoy, Miller, and Jayne—are his employers. *See Lewis v. Antwerpen Hyundai of Clarksville*, Civ. No. RDB-18-1393, 2018 WL 5809708, at *6 (D. Md. Nov. 5, 2018) (dismissing defendants where plaintiff failed to allege that they met criteria of an "employer" under Title VII). Indeed, the individual defendants appear to be mere supervisors. *See Spell v. Md. Human Relations Comm'n*, Civ. No. RDB-11-803, 2011 WL 6000862, at *5 (D. Md. Nov. 28, 2011) (dismissing defendants because it appeared from complaint that they were supervisors, not employers). Plaintiff does allege that Harnden Group is his employer but does not allege that it meets the

4

specific criteria of an "employer."[3] Construing the allegations of the complaint liberally, and in the light most favorable to Plaintiff, the Court concludes that Harnden Group is an "employer" pursuant to Title VII. *See Marshall v. Capital View Mut. Homes*, Civ. No. RWT-12-3109, 2013 WL 3353752, at *2 (D. Md. July 2, 2013) (declining to dismiss where *pro se* plaintiff failed to allege defendant employed fifteen employees).

Because the facial allegations relating to the individual defendants reveal that they were Plaintiff's coworkers and supervisors, the Title VII claims against them are dismissed. The Court proceeds with Defendants' arguments as to the remaining Defendant, Harnden Group.

## *III.   Motion to Dismiss Pursuant to Rule 12(b)(6)*

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *Presley v. Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A complaint need only satisfy Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the plaintiff must allege sufficient facts, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility exists where the facts allow the court to reasonably infer that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Inferring the "mere possibility of misconduct" is not enough to establish a plausible claim. *Id.* at 679. Moreover, a complaint offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555).

---

[3]   The issue of whether a defendant constitutes an "employer" under Title VII is jurisdictional, but its limitation that an employer have fifteen employees is not. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006) (holding "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue"). Rather, this limitation on the definition of employer provides "a basis for challenging the sufficiency of [the complaint.]" *Herndon v. Alutiiq Educ. & Training, LLC*, Civ. No. 16-72, 2016 WL 9450429, at *3 (E.D.Va. May 6, 2016). Defendants have not challenged the complaint in this way.

Here, the complaint must state a claim for relief that is plausible under Title VII. *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 584–85 (4th Cir. 2015).

*Pro se* plaintiffs are held to a less stringent standard than lawyers, and courts construe their pleadings liberally, no matter how inartfully pled. *Erickson*, 551 U.S. at 94. Liberal construction is especially appropriate where a *pro se* plaintiff alleges civil rights violations. *Brown v. N.C. Dep't of Corrections*, 612 F.3d 720, 722 (4th Cir. 2010). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *Robb v. Md. Aviation Admin.*, Civ. No. JKB-14-1421, 2014 WL 4056030, at *3 (D. Md. Aug. 15, 2014). *Pro se* complaints may "represent the work of an untutored hand requiring special judicial solicitude," but a court need not recognize "obscure or extravagant claims defying the most concerted efforts to unravel them." *Beaudett v. Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985).

Defendants challenge Plaintiff's complaint in two ways. Defendants argue the complaint is untimely. And, Defendants argue the allegations are insufficient to state plausible Title VII claims. The Court addresses these challenges in turn.

*A. Timeliness*

A Rule 12(b)(6) motion, testing the sufficiency of the complaint, does not generally reach the merits of an affirmative defense, e.g. timeliness; however, the court may reach timeliness where all facts necessary to the affirmative defense appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). Because the complaint here lacks some of the facts necessary to determine its timeliness, the Court cannot reach the merits of this argument.

After receiving a charge of discrimination and completing the administrative process, "the EEOC must give notice to the complainant of [his] right to file suit." *Price v. Grasonville Volunteer Fire Dep't*, Civ. No. ELH-14-1989, 2014 WL 7409891, at *6 (D. Md. Dec. 30, 2014).

The complainant, or plaintiff, has ninety days to sue. 42 U.S.C. § 2000e-5(f)(1). The ninety-day window begins when plaintiff (or a member of plaintiff's household of a suitable age and discretion) receives the notice. *Weathersbee v. Balt. City Fire Dep't*, 970 F. Supp. 2d 418, 427 (D. Md. 2013). Absent evidence of actual receipt, a court presumes a plaintiff received the right-to-sue letter three days after it was mailed. *See, e.g., Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984) (applying Fed. R. Civ. P. 6(d) to the ninety-day deadline). This ninety-day window is strictly enforced, *see Harvey v. New Bern Police Dep't*, 813 F.2d 652, 653 (4th Cir. 1987) (holding complaint was untimely where plaintiff sued ninety-one days after his household received the notice), even when the plaintiff is *pro se*, *Moulden v. Tangherlini*, Civ. No. RDB-14-3506, 2015 WL 8757609, at *2 (D. Md. Dec. 15, 2015).

In this case, the EEOC mailed the right-to-sue letter on May 31, 2018. (Not. of Right to Sue.) Because there are no allegations concerning actual receipt, the Court presumes Plaintiff received the right-to-sue letter on June 3, giving him until September 1 to file his complaint. The issue here is that it is not clear when Plaintiff filed the complaint in Anne Arundel County Circuit Court. The complaint itself contains two dates. On the first page, there is a September 13 time stamp, which could refer to the filing date but could just as easily refer to the date the document was accessed. (Compl. at 1.) On the last page, the complaint states, "Respectfully submitted, this day 23rd day August, 2018." (*Id.* at 4.) In his opposition brief, Plaintiff asserts that he filed on August 27, 2018, attaching another filing that was stamped on August 27. (Pl. Opp. at 2; Request for Waiver of Prepaid Costs, ECF No. 9-1.) Neither party attaches the docket sheet to resolve the dispute, and Defendants do not revive the timeliness argument in reply.

At this time, the Court rejects Defendants' argument that Plaintiff failed to timely file his complaint.

### B. *Sufficiency of the Allegations*

Defendants next argue that Plaintiff fails to allege sufficient facts to support a prima facie case for (1) race discrimination and (2) retaliation. Defendants do not cite *McDonnell Douglas*, 411 U.S. 792 (1973), but they employ its burden-shifting framework in arguing that Plaintiff fails to allege the prima facie elements. (Mot. Dismiss Mem. at 4 & 4 n.3, ECF No. 5-1.) This argument misstates the pleading requirements for a Title VII claim.

*McDonnell Douglas* outlines "an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002); *see also Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006) (applying this evidentiary standard to retaliation claims as well as discrimination claims). At the motion to dismiss stage, the appropriate standard is whether a plaintiff's factual allegations and the favorable inferences reasonably drawn therefrom give rise to a plausible right to relief. *Lowman v. Md. Aviation Admin.*, Civ. No. JKB-18-1146, 2019 WL 133267, at *5 (D. Md. Jan. 8, 2019). Although the elements of a prima facie case may be "helpful in analyzing ... plausibility," *Brown v. Rous. Auth. of Balt. City*, Civ. No. MJG-16-3616, 2017 WL 3189447, at *5 n.5 (D. Md. July 26, 2017), a plaintiff is not required to plead facts establishing a prima facie case to survive a motion to dismiss. *Swierkiewicz*, 534 U.S. at 511.

With this standard in mind, the Court analyzes whether Plaintiff sufficiently pleaded discrimination under § 2000e-2(a) and retaliation under § 2000e-3(a).

#### 1. *Discrimination*

Plaintiff puts forward two theories as to how Defendants discriminated against him because of his race. Plaintiff alleges that Defendants treated him differently and worse than other employees and created a hostile work environment. Even liberally construing the allegations, the Court concludes that Plaintiff fails to sufficiently plead a discrimination claim under either theory.

### i. *Disparate Treatment*

The elements of a prima facie case for disparate treatment—which are helpful in evaluating a motion to dismiss—are "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Plaintiff alleges aspects of a disparate treatment claim—e.g., membership in a protected class and adverse action—but fails to allege facts from which the Court could infer that race motivated the alleged mistreatment.

Plaintiff identifies several potential adverse employment actions. *See Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (defining an adverse employment action as an act that negatively impacts the terms, conditions or benefits of employment). Plaintiff alleges that he was not informed of nor allowed to work on several rain days when others were allowed to work; he was assigned to work in confined spaces without Army Corp of Engineers Certification; other employees replaced him on equipment that he used to operate; his payroll hours were reduced; and, most significantly, he was demoted from Operator to Laborer. Although a new job assignment alone does not constitute an adverse employment action, a reassignment can rise to the level of an adverse action when it has a "significant detrimental effect," *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 376 (4th Cir. 2004), like a "decrease in compensation, job title, level of responsibility or opportunity for promotion," *Boone v. Goldin*, 178 F.3d 253, 256–57 (4th Cir. 1999). Plaintiff's assertion that he was demoted, coupled with the loss in title from Operator to Laborer, sufficiently alleges that he suffered a "significant detrimental effect."

Even if these actions are adverse, Plaintiff has not alleged discriminatory intent. In a disparate treatment case, liability hinges on whether the protected trait motivated the employer to

take the adverse action. *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003); *Okusami v. Md. Dep't of Health & Mental Hygiene*, Civ. No. ELH-18-1701, 2019 WL 1003607, at *16 (D. Md. Feb. 28, 2019). Motivation may be shown by direct or indirect means.

Pertinent here, derogatory remarks may constitute direct evidence of discrimination where the remarks are related to the adverse employment action in question. *Sonpon v. Grafton Sch., Inc.*, 181 F. Supp. 2d 494, 499 (D. Md. 2002). "In other words, there has to be a nexus between the offensive remark and [the employer's] decision . . . for that remark to comprise direct evidence of discriminatory discharge." *Id.* "Where the derogatory statement bears little relation to the contested employment action and is attenuated by time, a plaintiff will likely fail to satisfy the nexus requirement." *EEOC v. CTI Glob. Sols., Inc.*, 815 F. Supp. 2d 897, 907 (D. Md. 2011). Plaintiff offers one piece of direct evidence of discriminatory intent: the fact that Jayne made the donut joke in December and reduced Plaintiff's payroll hours in June of the following year. The donut joke is derogatory, but Plaintiff does not establish its nexus to the adverse actions. Indeed, the joke was made six months before the reduction in payroll hours. *See Stewart v. Morgan State Univ.*, 46 F. Supp. 3d 590, 596–97 (D. Md. 2014) ("Plaintiff cannot show that this [racist] comment on one paper in a class, written by [his employer] sometime in the spring of 2010, was in any way linked to his dismissal from Morgan State by December 2010.").

Plaintiff also fails to allege indirect evidence of discriminatory intent. For one, Plaintiff does not allege that he performed his job satisfactorily,[4] so the Court cannot infer that the adverse actions were taken against him despite his satisfactory performance and, thus, for a prohibited

---

[4] In opposing the motion to dismiss, Plaintiff attaches an affidavit, which states, "Harnden . . . stated he heard I was an excellent employee from co-workers." (Dobson Affidavit ¶ 7, ECF No. 9-3.) Although this Court accepts factual allegations of a *pro se* litigant in an opposition to a motion to dismiss, *supra* note 2, this allegation is not specific enough to constitute indirect evidence of discriminatory intent. For example, it does not allege that Plaintiff received satisfactory evaluations for his operation of certain equipment before being replaced on that equipment.

reason, i.e., race-based discrimination. For another, Plaintiff does not provide comparative allegations that would allow the Court to infer that he was treated differently from similarly situated employees outside of his protected class. *See Lee v. Safeway, Inc.*, Civ. No. RDB-13-3476, 2014 WL 4926183, at *9 (D. Md. Sept. 30, 2014) (dismissing complaint which failed to allege any facts regarding job performance or similarly situated employees).

A plaintiff who bases his disparate treatment claim on a comparison to employees outside of the protected class must provide comparator evidence to show that other employees were "'similarly situated' in all relevant respects." *Williams v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 420 (D. Md. 2015) (quoting *Sawyers v. United Parcel Serv.*, 946 F. Supp. 2d 432, 442 (D. Md. 2013)). Plaintiff does not allege anything about the other employees, notably failing to allege their race, whether they held similar positions, or whether they were treated differently. *See, e.g., Dones v. Donahoe*, 987 F. Supp. 2d 659, 669 (D. Md. 2013) (holding plaintiff failed to satisfy fourth prong of sex discrimination because she did not provide any evidence of other employees' sex, age, job duties, or physical condition).

Plaintiff alleges that he was demoted, but, without specific factual allegations that he performed satisfactorily, the Court cannot conclude that it was based on his race. Plaintiff alleges that he was not allowed to work rain days, but he does not allege whether those who were allowed to work were similarly situated or outside of the protected class. Plaintiff alleges that he was assigned to work in confined spaces but does not allege whether everyone (or no one) else was assigned to work in confined spaces during that time. Plaintiff alleges that he was replaced on the equipment he used to operate, but he does not allege that he had operated it satisfactorily, nor that those who replaced him were similarly situated employees or outside his protected class. And, Plaintiff alleges that his payroll hours were reduced but does not allege whether he was performing

his duties satisfactorily, nor whether anyone else's payroll hours were reduced. In short, Plaintiff has suffered some adverse actions, but, the Court cannot discern a plausible claim that these actions were taken for a reason prohibited under Title VII.

### ii. *Hostile Working Conditions*

An employer also violates § 2000e-2(a) by requiring an employee to work under racially hostile work conditions. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66–67 (1986). For racially hostile work conditions, the prima facie elements are: (1) unwelcome conduct, (2) based on a plaintiff's race, (3) "which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment," and (4) which is imputable to the employer. *Okoli v. Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011). Plaintiff alleges unwelcome and race-based conduct—the donut jokes and a biased remark six months later. *See EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (holding conduct was based on sex where coworkers repeatedly referenced her gender in a derogatory way and conduct was unwelcome where employee complained of the conduct to supervisors). The question here is whether the conduct was severe or pervasive enough to create an abusive work environment.

Such an environment exists where, first, the conduct at issue is "severe or pervasive enough to create an objectively hostile or abusive work environment," and, second, the plaintiff "subjectively perceives the environment to be abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To determine whether alleged harassment is sufficiently severe or pervasive, courts consider all the circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23; *see, e.g., Parker v. Reema Consulting Servs., Inc.*, 915 F.3d 297, 304 (4th Cir. 2019) (holding conduct was severe or

pervasive where a sexually explicit rumor was "all-consuming" for two months and harmed employee's ability to work by excluding her from staff-wide meetings about the rumor, barring her from future promotions, and exposing her to false harassment complaints and physical threats); *Palmer v. Prince George's Cmty. Coll.*, Civ. No. RWT-14-897, 2015 WL 4744845, at *5 (D. Md. Aug. 7, 2015) (holding conduct was not severe or pervasive where defendant played a movie scene with racial slurs on repeat, was reprimanded by his supervisor, and again played a movie scene with racial slurs two years later).

Isolated instances of offhand comments from co-workers or biased remarks from a supervisor are not sufficient. *See Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006) (concluding rude treatment by co-workers falls short of the conduct required to sustain a hostile work environment claim); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d. 761, 765 (4th Cir. 2003) (concluding callous behavior by superiors did not rise to the type of severe or pervasive activity needed to sustain a hostile work environment claim). "'[S]imple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Faragher v. Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998)). Plaintiff alleges two isolated incidents, six months apart, in which his co-workers and a superintendent made race-based and biased remarks. As alleged, Plaintiff has been the subject of inappropriate comments that do not belong in the workplace. Such isolated instances, however, are not so severe or pervasive as to create an objectively hostile work environment.

### 2. *Retaliation*

Title VII prohibits employers from retaliating against an employee for "proceeding under Title VII" or "opposing discriminatory practices in the workplace." *Laughlin v. Metro. Wash.*

*Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). The elements of a prima facie case for retaliation—which are helpful in evaluating a motion to dismiss—are that: (1) the employee engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal link exists between the protected activity and the adverse action. *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2010). Plaintiff alleges two possible instances of protected activity and, therefore, two possible instances of retaliation.

Protected activity includes filing formal complaints and complaining to supervisors about suspected unlawful discrimination. *Breck v. Md. State Police*, Civ. No. TDC-16-2075, 2017 WL 2438767, at *5 (D. Md. June 5, 2017). Title VII retaliation "protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful." *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005); *see generally Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 282 (4th Cir. 2015) (en banc) (rejecting a narrow approach to retaliation "at odds with the hope and expectation that employees will report harassment early"). Thus, the alleged unlawful discrimination to which the protected activity is directed may be complete or in progress. *DeMasters v. Carilion Clinic*, 796 F.3d 409, 417 (4th Cir. 2015); *see, e.g., Perry v. Maryland*, Civ. No. MJG-17-3619, 2018 WL 1183656, at *5 (D. Md. Mar. 7, 2018) (holding plaintiff reasonably believed a sexually explicit email and her employer's lack of response created hostile work conditions even though the conditions were insufficient to state a discrimination claim). Here, Plaintiff was the target of a race-based joke and, then, experienced multiple instances of unfavorable treatment. The allegations are sufficient to infer that Plaintiff reasonably believed Defendants treated him unfavorably based on his race. Therefore, by alleging that he reported this treatment to his supervisors and the EEOC, Plaintiff sufficiently pleads protected activity.

Turning to the second element of retaliation, employer actions are materially adverse when they are "harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Materially adverse actions are not trivial harms but rather those that produce an injury. *Cepada v. Bd. of Educ. of Balt. Cnty.*, 814 F. Supp. 2d 500, 515 (D. Md. 2011). Here, Plaintiff alleges that he was demoted from Operator to Laborer. *See Niner v. Garrett Cnty. Pub. Works*, Civ. No. ELH-17-2948, 2018 WL 3869748, at *17 (D. Md. Aug. 15, 2018) (concluding "loss of supervisory responsibility may constitute an adverse action"). Plaintiff also alleges that Jayne shortened his payroll hours. *See Wells v. Gates*, 336 F. App'x 378, 384 (4th Cir. 2009) (concluding "[l]oss of compensation could qualify as [materially adverse]"). Because demotion, loss of title and responsibility, and diminished hours are harms that result in injury to an employee, Plaintiff has sufficiently alleged materially adverse actions.

Both actions occurred shortly after Plaintiff engaged in protected activity. To establish the third element, a plaintiff must show a causal link between the protected activity and adverse action: "the employer must have taken the adverse action *because* the plaintiff engaged in the protected activity." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998). A plaintiff may establish the causal link by temporal proximity if the proximity is "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). Thus, "a causal connection may exist where the employer takes adverse employment action against an employee shortly after learning of the protected activity." *Penley v. McDowell Cnty. Bd. of Educ.*, 876 F.3d 646, 656 (4th Cir. 2017); *see Dowe*, 145 F.3d at 657 ("Since, by definition, an employer cannot take action because of a factor of which it is unaware, the employer's knowledge that the plaintiff engaged in a protected activity is absolutely necessary to establish the third element of the prima facie case.").

Two months is "very close." *See Vicino v. Maryland*, 982 F. Supp. 2d 601, 614 (D. Md. 2013); *see also Romeo v. APS Healthcare Bethesda, Inc.*, 876 F. Supp. 2d 577, 588–89 (D. Md. 2012) (finding a two-month interval sufficed to show the "little proof" required to establish causation for a prima facie case of retaliation). Here, Plaintiff filed an internal discrimination complaint on December 18, 2017 and was demoted sometime between January 3 and February 22, 2018. This two-month interval is sufficiently short to establish a causal link. Plaintiff filed an EEOC charge around the same time as his internal complaint. On May 31, 2018, the EEOC mailed a copy of Plaintiff's right-to-sue letter to Harnden at Harnden Group, and, in June, Jayne reduced Plaintiff's payroll hours. There is nothing in the pleadings to indicate anyone at Harnden Group knew that Plaintiff filed an EEOC charge until the right-to-sue letter. This one-month interval is also sufficiently short to establish a causal link by temporal proximity.

Plaintiff has sufficiently alleged that he engaged in two instances of protected activity and that, shortly thereafter, Defendants took materially adverse action against him. Consequently, Plaintiff's retaliation claim survives Defendants' motion to dismiss.

## IV. Conclusion

For the foregoing reasons, an Order shall enter granting in part and denying in part Defendants' motion to dismiss. Plaintiff's disparate treatment and hostile work environment claims will be dismissed, but his retaliation claim against Harnden Group survives.

DATED this 15 day of March, 2019.

BY THE COURT:

James K. Bredar
Chief Judge